## Chrisman v. Quick, et al.

### Appeal from Jefferson Circuit Court

(Decided March 23, 1917.)

### (Common Pleas Branch, Second Division).

1. Deeds—Undue Influence—Validity.—In an action to cancel a deed, upon the ground of fraud and undue influence, executed by deceased to his adopted daughter, it will not be set aside, where the evidence shows that the daughter had been loyal and faithful, for more than forty years, and that the making of the deed was a consummation of a fixed purpose on the part of deceased.
2. Deeds—Mental Capacity.—Where the evidence shows that deceased transacted his business continuously up to the time of the execution of the deed, and for some time thereafter, and that he was mentally sound at all times, the deed will not be disturbed upon the ground of lack of mental capacity.

HUBBARD & HUBBARD, R. E. WOODS, JOHN T. HOGE and WM. F. CLARK for appellant.

R. L. PAGE for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

In 1914, Frank Chrisman executed and delivered to Mrs. Ida Quick a deed for two pieces of real estate situated in the city of Louisville, Jefferson county, Kentucky. About the same time Chrisman executed another deed to Frank Guise for a farm owned by Chrisman in Jefferson county. Shortly thereafter Frank Chrisman died, and this action was instituted in the Jefferson circuit court, by a brother, Charles Chrisman, of Newport, Kentucky, to set aside the conveyance and cancel the deed to Ida Quick, upon three grounds: (1) Want of consideration; (2) undue influence; and, (3) mental incapacity of the grantor.

The deed to Frank Guise for the farm is not assailed. Frank Chrisman was a man past seventy years of age at the time of the execution of the deed. He and his wife had for many years resided in Jefferson county. Mrs. Chrisman died a few years before her husband. They had no children.

Some forty-eight years before his death, Frank Chrisman and his wife adopted two children from an orphanage. Their names were Ida Guise and Frank Guise, and were children of a sister of Mrs. Chrisman, and were at the time of their adoption by Chrisman of very tender years. They are the grantees in the deeds above mentioned. These children took the name of Chrisman, and the daughter, as well as the son, labored in season and out for the comfort, support and happiness of their foster-parents. The girl married Will Quick, some eighteen years before the death of Chrisman, and she and her husband, as well as Adolph Chrisman, a blind brother of the deceased, are made defendants in this action. Adolph Chrisman declined to become a party plaintiff with his brother, Charles Chrisman, in the prosecution of this action.

To sustain the charge that the deed to the daughter was obtained by undue influence on the part of Ida Quick, over the grantor, it is shown in the evidence that she was constantly with Mr. Chrisman for years before his death, waiting on and caring for him, and that he loved her devotedly, and relied much upon her judgment and acceded readily to her wishes. Upon one occasion it is shown that the grantor paid a visit to his brother, Charles Chrisman, at Newport, and shortly after his arrival the grantor having had lunch with his brother, became suddenly ill, whereupon Mrs. Quick became his nurse and constantly attended him, staying with him both day and night, and showing the greatest interest in him and his welfare; that in two or three days she suggested that he should return home, and accompanied him to Louisville, and there continued to wait on him. The appellant, Charles Chrisman, charges that Mrs. Quick hurried his sick brother away from Newport because she believed he was dangerously ill, and being in the home of his brother might withhold his property from her, and to be relieved of this dread induced the grantor to accompany her to his home in order that she might have full sway over him. A careful reading of

the testimony, however, does not impress the mind with such an idea. Mrs. Quick appears to have been a loyal daughter to Mr. Chrisman. She loved him with a devotion equal to a natural daughter, and manifested her devotion to him, by helpful assistance and kindly attention, through all the years that she resided with him. The evidence discloses a beautiful relationship between father and daughter in which love and devotion play the leading roles through many years. Moreover, both Mr. Chrisman and his wife often expressed their intention of conveying this property to their adopted daughter, Mrs. Quick, and the farm to the son. This is shown by numerous witnesses whose credibility is unquestioned. The deed, therefore, appears to be only the consummation of a fixed purpose on the part of the grantor and his wife to reward the devotion and good offices of their foster-daughter.

Upon the other hand there is no reason shown why Frank Chrisman should have preferred his brother, Charles, over his foster-child. The brothers were not intimate, nor closely associated. While it is shown that they were friendly, yet Charles Chrisman testifies that he had only visited his brother twice in forty years. It would require a stretch of the imagination to believe that Frank Chrisman loved his brother who visited him twice in a lifetime, as much or more than he did the foster-child who had grown up in his home. Whatever influence Mrs. Quick exerted over the grantor was only that which naturally flows from repeated acts of kindness and was not such as the law condemns. Undue influence means a wrongful influence, and influence secured through affection and acts of kindness is not wrongful, therefore, not such as would justify a court of equity in setting aside a conveyance.

Undue influence is:

"Any influence obtained over the mind of a grantor (or testator) to such an extent as to destroy his free agency, and to constrain him to do against his will what he would otherwise refuse to do. But any reasonable influence obtained by acts of kindness or by argument addressed to the understanding is not in law undue influence. Bannon v. Patrick Bannon Sewer Co., 136 Ky. 573; Watson's Ex'r v. Watson, 137 Ky. 33; Yahr v. Hynes, 159 Ky. 521; Collier v. Dundon, &c., 164 Ky. 345.

It is also insisted that Frank Chrisman, in April, 1914, at the date of the making of the deed, did not have mental capacity sufficient to know and understand the nature of the transaction which the deed involved, and, therefore, the conveyance is invalid. With this contention we cannot agree. Frank Chrisman, according to the evidence, was a man of affairs, and had accumulated quite a bit of property. He was always able to deal with questions of business with a clear understanding, and to take care of his affairs and did do so, up to and including the time of the making of the deed. For many years before the deed was made he had repeatedly declared his intentions to make it in accordance with the provisions which it contains, and no one has the temerity to intimate, or for a moment contend that he was not in the full possession of all of his mental faculties during these years. Many of his associates testify that he was strong mentally at the time of the making of the deed. From this evidence we are of opinion that Frank Chrisman was mentally capable of disposing of his property by deed in April, 1914, and he did, in fact, know the natural objects of his bounty, and recognized them in the execution of these deeds.

"Equity looks only to the competency of the understanding, and neither age, sickness, extreme distress nor debility of the body will affect the capacity to make a contract or conveyance, if sufficient intelligence remains to understand the transaction." 9 Cyc. 459.

A more natural disposition of his property could not have been made, and considering the love, respect and devotion lavished upon him by his daughter, through more than forty long years, it would indeed be strange, had he failed to give her a substantial part of his property. We conclude that the deed is supported by sufficient consideration, and was executed by Frank Chrisman at a time when he possessed the mental capacity to execute such instrument, and was free from undue influence.

Appellant complains that the lower court erred in overruling his demurrer to the second paragraph of the answer, because the answer alleged a different consideration from that recited in the deed. We do not believe this complaint well founded, because the answer alleges that the deed was executed by Chrisman in consideration of the services performed by Mrs. Quick, and

love and affection on the part of the grantor for her, and was a consummation of an often-repeated declaration and promise made by Chrisman to convey the property to her. The recital of a given consideration in a deed is not conclusive upon the parties thereto, but a different consideration may be shown, even to sustain the deed, notwithstanding the parties may occupy a fiduciary relation to each other. The second paragraph of the answer, therefore, stated a good defense and the demurrer was properly overruled.

The learned chancellor in passing upon the case in the circuit court rendered an opinion in which we concur, but which is too long to incorporate here. He sets out in detail his finding of fact, and the law applicable thereto, and concludes by denying the plaintiff, Charles Chrisman, the relief sought and dismisses his petition. The finding of fact abundantly sustains the conclusions of the chancellor. We, therefore, unreservedly concur in that opinion.

Judgment affirmed.